**SHEPARD CONVENTION SERVICES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**International Alliance of Theatrical Stage Employees, AFL–CIO, Intervenor.**

**No. 95–1369.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 2, 1996.

Decided June 11, 1996.

J. Roy Weathersby, Atlanta, GA, argued the cause for the petitioner. Cameron S. Pierce was on brief.

William M. Bernstein, Attorney, National Labor Relations Board, Washington, DC, argued the cause for the respondent. Linda R. Sher, Associate General Counsel, and Aileen A. Armstrong, Deputy Associate General Counsel, National Labor Relations Board, were on brief.

Robert S. Giolito, Atlanta, GA, entered an appearance for the intervenor.

Before: WALD, GINSBURG and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Shepard Convention Servs., Inc. (Shepard) petitions for review of a decision of the Na-

tional Labor Relations Board (Board) finding that Shepard committed an unfair labor practice by failing to bargain with the newly certified International Alliance of Theatrical Stage Employees (Union). The Board cross-applies for enforcement of its order. Shepard alleges several defects in the election and certification process. Because the Board improperly reversed the Regional Director's decision to conduct a manual election, we grant the petition for review and deny the cross-application for enforcement.

I.

Shepard is a Georgia corporation that installs, maintains and dismantles trade show and convention displays. On October 8, 1991 the Union, an AFL–CIO affiliate, filed with the Board's Region 10 office a petition seeking to represent a unit consisting of all of Shepard's "regular full-time and regular part-time" employees, who were then represented by the Brotherhood of Trade–Show and Display Workers Union, Local 349 (Local 349), another AFL–CIO affiliate, under a collective bargaining agreement set to expire on December 31, 1991. Local 349 intervened, alleging the petition violated the AFL–CIO's "anti-raiding" prohibitions. Accordingly, on December 11, 1991, the Regional Director "suspended for 30 days" "[f]urther action" on the Union's representation petition. Deferred Appendix (DA) 3.[1]

Shepard and Local 349 subsequently negotiated a new collective bargaining agreement on May 18, 1992. On January 8, 1993, the Union and Local 349's parent union entered into a "Memorandum of Understanding" under which they agreed that the Union would not seek to represent "regular" employees of any Atlanta exhibition employer with which the parent union had a collective bargaining agreement in effect but that the Union could seek to represent "non-regular" employees, that is those employed "from time to time on a call or job basis." DA 234.

By letter dated February 10, 1993, the Union requested the Regional Director to "resume processing of its petition," asserting that the "competing claims of interest" between it and Local 349 had "been resolved by agreement between the two unions." DA 8. On March 1, 1993, the Regional Director issued a "Notice of Representation Hearing." Local 349 again intervened and Shepard filed a "Motion to Cancel Hearing and Dismiss Petition" on the ground that the Union's representation petition had lapsed at the end of the thirty-day suspension.[2] On April 22, 1993, the Regional Director ruled that the Union's petition, which was timely when first filed on October 8, 1991, remained valid after the thirty-day suspension and that its processing could be reactivated at any time thereafter, notwithstanding the new collective bargaining agreement negotiated in the interim. Accordingly, he directed that a union representation election be held.

By letter dated April 11, 1994 the Union asked the Regional Director to conduct the election by mail because of the "large number of eligible voters that will be on-call workers." DA 107. On April 13, 1994, the Regional Director rejected the Union's "suggestion." The Union then filed a "special request" for review by the Board, which both Shepard and Local 349 opposed. Meanwhile, in a letter dated April 19, 1994, Shepard requested the Regional Director to order a new "showing of interest" because of the length of time since the last showing and because of the increase in the unit's size

---

1. The AFL–CIO's anti-raiding provisions, set out in Article XX of its constitution, "preclude member labor organizations from raiding a rival member's work jurisdiction." DA 64. When a raiding dispute arises between AFL–CIO members, the Board ordinarily suspends action for 30 days to permit internal AFL–CIO resolution. *See* N.L.R.B. Casehandling Manual §§ 1150–1152.1.

2. At the time of the Union's request, it could not have filed a new representation petition because of the Board's "contract bar" rules. *See Donald Schriver, Inc. v. N.L.R.B.*, 635 F.2d 859, 867 n. 10 (D.C.Cir.1980) ("Under normal 'contract-bar' rules, an election petition for representative status may not be filed during the term of a collective bargaining agreement that has a duration of up to three years, or during the first three years of an agreement of longer duration, except during an open period 60–90 days prior to the expiration date of the contract.") (citing *General Cable Corp.*, 139 N.L.R.B. 1123 (1962)).

since the petition was filed.[3] The Regional Director denied the request on May 2, 1994.

In a decision dated August 3, 1994 the Board summarily denied Shepard's request for a new showing of interest "as lacking in merit," *Shepard Convention Servs., Inc.,* 314 N.L.R.B. 689, 690 n. 3, 1994 WL 410857 (1994), and, by a 2–1 vote, "decided to grant the Petitioner's request for a mail ballot election for the 'on-call' employees," finding that "[u]nder the facts ... the Regional Director abused his discretion by denying the Petitioner's request for a mail ballot for the 'on-call' employees," *id.* at 689–90.

On September 12, 1994, the Regional Director ordered an election to be conducted with mail voting by *all* eligible employees. On September 16, 1994, Shepard requested review from the Board on the ground that the Board's August 3, 1994 decision had authorized mail voting only for on-call employees and that it therefore "must be read as denying [the Union's] request that other employees be permitted to vote by mail ballot." DA 175. The Board summarily denied the request on September 23, 1994.

An election was conducted entirely by mail over a two-week period in late September and early October 1994. Of the 438 eligible employees, a maximum of 77, or roughly 17.5%, cast valid ballots, including nine that were challenged.[4] Of the 68 unchallenged ballots 40 were cast for the Union, 23 for Local 349 and 5 for no union at all.

On October 24, 1994, Shepard filed objections to the election, challenging the balloting by mail, the Board's refusal to require a new showing of interest and the reactivation of the original representation petition. By decision issued November 10, 1994, the Regional Director dismissed the objections and certified the Union. The Board denied review of that decision in an order dated December 15, 1994. Shepard subsequently refused to bargain with the Union and on May 31, 1995, the

Board issued an order holding that Shepard's refusal was an unfair labor practice in violation of section 8(a)(5) and (1) of the National Labor Relations Act. *Shepard Convention Servs., Inc.,* 317 N.L.R.B. No. 111, 1995 WL 348139 (1995).[5] Shepherd now petitions for review of the Board's decision.

## II.

Shepard raises four objections to the Union certification, alleging that the Board erred in (1) ordering that the voting be conducted by mail, (2) upholding reactivation of the Union's representation petition after Shepard and Local 349 entered into a new collective bargaining agreement, (3) refusing to require a new showing of interest before the election and (4) certifying the Union after it was approved by only 9% of the eligible voters. Because we conclude the Board improperly reviewed and reversed the Regional Director's initial decision to conduct a manual election, we grant the petition on the first ground without addressing the other three.

The Board's "Casehandling Manual" (Manual) provides that "[t]he Regional Director should decide whether, or to what extent, mail voting should be employed," noting that "[p]articularly where long distances are involved, or where eligible voters are scattered because of their duties, the possibility should be explored." Manual § 11336. The Manual also cautions that "[b]ecause of the absence of direct Board supervision of voting procedures ... mail ballots are more likely to result in objections that cannot be as readily resolved as when the voting procedures are carried out in the presence of a Board agent." *Id.* "For this and other reasons, the use of mail balloting, at least in situations where any party is not agreeable to the use of mail ballots, should be limited to those circumstances that clearly indicate the infeasibility of a manual election." *Id.* Here

---

**3.** The October 8, 1991 petition to represent only "regular" employees estimated the number of employees in the unit at 250. As of April 1994 the proposed unit, which then included nonregular (on-call and casual employees), consisted of 424 members.

**4.** In addition, 9 other ballots were found "void."

**5.** "Refusing to bargain and thereby engendering an unfair labor practice complaint is the standard route to challenge a certification order, which is not subject to direct review." *B B & L, Inc. v. N.L.R.B.,* 52 F.3d 366, 369 n. 2 (D.C.Cir. 1995).

both Shepard and Local 349 objected to the mail-in election proposal and the Regional Director, in the absence of any evidence indicating "infeasibility" of a manual election,[6] properly denied the Union's request for an election by mail. That should have been the end of it. The Board, however, undertook to second-guess the Regional Director in violation of its own regulations.

The Board's regulations strictly limit its interlocutory review of a regional director's decisions: "Unless expressly authorized by the Rules and Regulations, rulings by the regional director or by the hearing officer shall not be appealed directly to the Board, but shall be considered by the Board on appropriate appeal pursuant to § 102.67(b), (c), and (d) or whenever the case is transferred to it for decision." Under the cited subsections, "The Board will grant a request for review only where compelling reasons exist therefor," 29 C.F.R. § 102.67(c), which the regulations narrowly define to include only the following:

(1) That a substantial question of law or policy is raised because of (i) the absence of, or (ii) a departure from, officially reported Board precedent.

(2) That the regional director's decision on a substantial factual issue is clearly erroneous on the record and such error prejudicially affects the rights of a party.

(3) That the conduct of the hearing or any ruling made in connection with the proceeding has resulted in prejudicial error.

(4) That there are compelling reasons for reconsideration of an important Board rule or policy.

*Id.* Neither the Union's "special request" for review of the decision to hold a manual election nor the Board's order granting it identified any of these "compelling" grounds—apparently because none was present.

The Regional Director's decision to conduct a manual election was in accord with the Board's established policy favoring manual elections under such circumstances. *See* Manual § 11336. In fact, the Regional Director's explanation for denying the Union's request for a mail election virtually tracks the Manual's language:

Mail ballot elections are generally conducted where long distances are involved or where eligible voters are scattered because of their duties. Neither situation is present herein. Moreover, because of the absence of direct Board supervision of voting procedures, mail ballots are more likely to result in objections that cannot be as readily resolved as when the voting procedures are carried out in the presence of a Board agent.

DA 108. Given that the Regional Director ruled strictly by the book, we do not see how his conduct could have "resulted in prejudicial error."[7] Nor did the Board's decision purport to address or revisit any policy, rule or precedent. Its decision relied expressly on the particular "facts" of the certification procedure. Finally, those facts do not support a finding that the Regional Director's factual determination was "clearly erroneous."

As originally proposed, the manual election was to be conducted over a two-and-one-half-hour period during lunchtime at two locations, Shepard's "Training Room" and the "Georgia World Congress Center." According to Shepard's opposition to the Union's request for review of the Regional Director's decision, these sites are "at opposite ends of the City of Atlanta" and "[t]aking into account the geographical scope of the City of Atlanta, it is unlikely that any voter will be required to travel more than twenty or thirty minutes to reach a voting poll." DA 117. These factual assertions, which the Union

---

6. In its letter requesting a mail ballot election, the Union simply noted its "understanding there will be a large number of eligible voters that will be on-call workers" and stated: "Therefore, mail ballot would be the most appropriate election to hold under these circumstances." DA 107.

7. While the Manual "provides guidance only and is not a form of authority binding on the General Counsel or the Board," *Starlite Cutting, Inc.,* 280 N.L.R.B. 1071, 1071 n. 3, 1986 WL 54009 (1986), its provisions *a fortiori* reflect the Board's policies. Thus, the Regional Director's decision to follow them cannot have been, as the Board characterized it, an abuse of discretion.

has never disputed, suggest that manual voting would be anything but "infeasible," while the Board's speculation that "a number of the employees may have other employment which may restrict their ability to reach the polls," 314 N.L.R.B. 689, is, as the dissenting member noted, without evidentiary support, *see id.* at 690.

In sum, the Board's reversal of the Regional Director's discretionary decision to conduct a manual election cannot be upheld. Had the Board left the decision intact, as its regulations required, voter turnout might well have been higher. *See Kwik Care Ltd. v. N.L.R.B.*, 82 F.3d 1122, 1126 (1996) ("[P]ostal elections generally inspire lower participation than on-site elections."). It could hardly have been lower.

For the preceding reasons the petition for review is granted and the cross-application for enforcement is denied.

*So ordered.*