

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-1999

# NLRB v. Cedar Tree Press

Precedential or Non-Precedential:

Docket 98-3086

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"NLRB v. Cedar Tree Press" (1999). *1999 Decisions.* Paper 60.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/60

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 9, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-3086

NATIONAL LABOR RELATIONS BOARD,

      Petitioner,

v.

THE CEDAR TREE PRESS, INC.,

      Respondent

THE GRAPHIC COMMUNICATIONS INTERNATIONAL
UNION LOCAL 14M AFL-CIO,

      Intervenor
      (See Clerk's Order of 3/11/98)

ON APPLICATION FOR ENFORCEMENT
FROM NATIONAL LABOR RELATIONS BOARD
( No. 4-CA-25843)

ARGUED OCTOBER 26, 1998

BEFORE: STAPLETON, LEWIS, and MAGILL,*
Circuit Judges.

(Filed March 9, 1999)

_____

* Honorable Frank J. Magill, Senior Circuit Judge for the United States
Court of Appeals for the Eighth Circuit, sitting by designation.

AILEEN A. ARMSTRONG
CHARLES P. DONNELLY
MEREDITH L. JASON (ARGUED)
National Labor Relations Board
1099 14th Street, N.W., Suite 8101
Washington, DC 20570-0001

 Attorneys for Petitioner

STEPHEN C. RICHMAN
ANNE C. RITTERSPACH (ARGUED)
Markowitz & Richman
121 South Broad Street, Suite 1100
Philadelphia, PA 19107

 Attorneys for Intervenor Petitioner

SHELDON N. SANDLER (ARGUED)
Young, Conaway, Stargatt & Taylor
Post Office Box 391
Rodney Square North, 11th Floor
Wilmington, DE 19899-0391

 Attorney for Respondent

OPINION OF THE COURT

LEWIS, Circuit Judge.

The National Labor Relations Board ("NLRB" or"Board") petitions for enforcement of its order directing Cedar Tree Press, Inc. ("Cedar Tree" or "company") to bargain with the Graphic Communications International Union, Local 14-M, AFL-CIO ("union"). Although Cedar Tree concedes that it has refused to recognize or bargain with the union, the company contends that the NLRB should not have certified the union. More specifically, Cedar Tree asserts that the Board abused its discretion by refusing to issue an absentee mail ballot to an eligible member of the bargaining unit who was unable to be present on the day of the union representation election. In this case, however, the NLRB adhered to its internal guidelines prohibiting a vacationing

2

employee from voting by absentee ballot. Accordingly, we reject the company's contention and will enforce the Board's order.

I.

Cedar Tree operates a commercial printing business in Wilmington, Delaware. On November 1, 1996, the union filed a representation petition with the NLRB, seeking certification as the collective bargaining representative of certain Cedar Tree employees. In late December 1996, the NLRB announced that the representation election would be held on January 8, 1997.

David R. Perrine, an employee who was part of the bargaining unit, had previously arranged to be in Puerto Vallarta, Mexico, on January 8. Perrine had won an all-expenses paid vacation in a supermarket contest and he and his wife had scheduled their vacation in October 1996, well before Perrine could have known of the election date, for the period between January 3 through January 10, 1997. Upon learning of the conflict, Perrine asked the NLRB for an absentee ballot so that he could vote in the election. A Board representative informed him that NLRB policy forbids absentee ballots for vacationing employees.

The NLRB conducted the secret-ballot election, on January 8, 1997 as scheduled, without Perrine's participation. Forty-nine of the 52 eligible employees voted. The tally totaled 25 votes for representation by the union and 24 votes against representation; thus, the outcome turned on a single vote.

On January 14, 1997, the company filed a timely objection to the election, alleging that the NLRB improperly denied Perrine an absentee ballot. On February 17, the NLRB's acting regional director issued a decision overruling the company's objection and certifying the union. The company filed a request for review of the acting regional director's decision with the Board, but that request was denied. Following certification of the union, Cedar Tree continued to refuse to bargain. On July 24, 1997, the NLRB issued a decision and order finding that the company's refusal to bargain with the union violated Section 8(a)(5)

3

and (1) of the National Labor Relations Act.[1] On February 12, 1998, the NLRB filed this petition for enforcement of its July 24 order.

II.

We have jurisdiction over this matter pursuant to Section 10(e) of the National Labor Relations Act. See 29 U.S.C. S160(e). Although appellate review of a legal question raised in a Board decision and order is plenary, when reviewing the policies and procedures established by the Board on the conduct of elections, we extend substantial deference to the Board. See Cavert Acquisition Co. v. NLRB, 83 F.3d 598, 603 (3d Cir. 1996); see also Jamesway Corp. v. NLRB, 676 F.2d 63, 67 (3d Cir. 1982) (noting that NLRB v. A.J. Tower Co., 329 U.S. 324 (1946) "accords the NLRB wide discretion in formulating election procedures. . .").

Since the NLRB enjoys wide discretion in its administration of representation elections, as long as "the Board adopts a rule that is rational and consistent with the Act, then the rule is entitled to deference from the courts." District 1199P, National Union of Hospital and Health Care Employees v. NLRB, 864 F.2d 1096, 1101 (3d Cir. 1989) (quoting Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 41-42 (1987)). Thus, we review the Board's decision for abuse of discretion.

In the National Labor Relations Board Casehandling Manual, the NLRB takes the following position:

> In a mixed manual-mail election, mail ballots should be sent only to those who cannot vote in person

_____

1. The Act states, in relevant part:

> (a) It shall be an unfair labor practice for an employer --

> (1) to interfere with, restrain, or coerce employees in the exercise of
> the rights guaranteed in section 157 of this title;

> . . .

> (5) to refuse to bargain collectively with the representatives of his
> employees, subject to the provisions of section 159(a) of this title.

29 U.S.C. SS 158(a)(1) and (5).

because of employer action (e.g., assignment of employees to duties that make it impossible or impractical for them to come to a polling place). Pipeline employees, seamen, and traveling utility crews usually vote by mail.

Mail Ballots should not be sent to those who are in the Armed Forces, are ill at home or in a hospital, are on vacation, or are on leave of absence due to their own decision or condition.

Manual S 11336.1 (emphasis added).

Cedar Tree argues that the NLRB "should not have treated its provisions concerning absentee voting as mandating rejection of [the] absentee ballot request [of Perrine] without consideration of the individual facts [regarding his circumstances]." Respondent's Br. at 12. Cedar Tree contends that the regional director should have disregarded the language of the casehandling manual, which clearly states the NLRB's policy prohibiting absentee ballots, and instead should have made an exception in Perrine's case. In fact, Cedar Tree asserts, "it was an abuse of discretion to deny [Perrine] the opportunity to vote by absentee, mail ballot based on . . . the Manual." Respondent's Br. at 15. We disagree.

Although the casehandling manual is not binding on the Board, a regional director's decision to follow those guidelines does not constitute an abuse of discretion.[2] See Shepard Convention Services, Inc. v. NLRB, 85 F.3d 671, 674 & n.7 (D.C. Cir. 1996). While not authoritative, the manual's "provisions a fortiori reflect the Board's policies." Id. In fact, the manual's guidelines represent the Board's reasoned policy choices and are designed to relieve regional officers from having to exercise discretion regarding a variety of matters. In this case, the NLRB has adopted a

_____

2. See e.g., Kwik Care Ltd. v. NLRB, 82 F.3d 1122, 1126 (D.C. Cir. 1996); London's Farm Dairy, Inc. v. NLRB, 1997 WL 345623 (N.L.R.B.) (June 20, 1997) (noting that the casehandling manual does not constitute "a form of authority binding . . . on the Board."); National Labor Relations Board Casehandling Manual, Part Two, Purpose of Manual ("The guidelines included . . . are not intended to be and should not be viewed as binding procedural rules.").

5

policy of freeing regional directors from the burden of individualized consideration of applications by vacationing employees for absentee ballots. The NLRB did not abuse its discretion by sustaining the Regional Director's decision to deny Perrine an absentee ballot in accordance with the manual.3

Cedar Tree also fails to identify any statutory authority which would compel the Board to make individualized determinations about absentee ballots. Instead, the company relies on a series of cases related to the NLRB's discretion to mandate mail ballot elections to argue for independent discretion in granting absentee ballots for vacationing employees in on-site elections. See e.g., Shepard Convention Servs., 314 N.L.R.B. 689 (1994), enf. denied, 85 F.3d 671 (D.C. Cir. 1996) (permitting mail balloting because of the large number of "on-call" employees); London's Dairy Farm Inc., 323 NLRB 186 (June 20, 1997) (permitting mail balloting because of staggered shifts); Reynolds Wheels Int'l, 323 NLRB 187 (June 20, 1997) (permitting mail balloting because of employees scattered geographically). However, these mail balloting cases are easily distinguished from absentee ballots in manual (i.e., on-site) elections.

Mail ballot elections provide an alternative method to traditional manual ballot representation elections. The decision to conduct an election either completely or partially by mail ballot is based on specific employment factors (i.e., wide geographic disbursement of employees or staggered work schedules) that make on-site elections impractical. See Manual S 11314. This decision does not

_____

3. Cedar Tree points out that the manual expressly provides that it is intended only "to provide procedural and operational guidance for the agency's staff " and that it "is expected that there may be departures through the exercise of professional judgment in varying circumstances." It faults the Acting Regional Director for having treated the manual as mandating rejection of the request for an absentee ballot and the Board for turning a non-binding guideline into an inflexible rule. We read the manual as establishing a policy that, in stipulated circumstances, a Regional Director can elect not to give individualized consideration to applications for absentee ballots. As explained hereafter, we reject the argument that this policy is arbitrary and capricious.

require an individualized determination of personal circumstances to award mail ballots upon request. Instead, the decision to use mail balloting as the form of election is made prior to setting the election date. The employees are easily identified; in fact, they are pre-determined. The purpose of such narrow criteria is to ensure that mail balloting is employed in a limited number of cases each year.

Cedar Tree has not raised any specific allegations challenging the way in which the NLRB's absentee ballot policy was applied in this case. Instead, it merely attacks the fact that the policy was applied at all while deriding the Board's action as "arbitrary and erroneous." Nonetheless, despite our traditional deference to the Board, we are required to examine the policy and the Board's reasons for adopting it. See Bro-Tech Corp. v. NLRB, 105 F.3d 890, 894 (3d Cir. 1997). Upon review, we conclude that an assortment of sound policy reasons exist to prohibit absentee ballots.

First, requiring regional directors to accommodate individual requests for absentee ballots, as Cedar Tree advocates, would apply to virtually every NLRB election. It seems obvious that this would significantly alter the Board's work and allocation of resources, perhaps leading to considerable delay, administrative burdens and bureaucratic confusion in conducting elections. 4 As the NLRB notes, an individualized determination regarding the availability of an absentee ballot would prove time-consuming and potentially lead to extensive post-election litigation. On the other hand, a blanket rule requiring the use of absentee ballots upon demand would be particularly burdensome and costly for the NLRB to implement and administer.

The logistical demands of delivering, receiving, processing and counting absentee ballots in nearly 3,500 separate elections each year would require the NLRB to allocate significant financial resources. As a government agency, the Board has limited resources and must make difficult policy

---

4. For instance, in fiscal year 1997, the Board conducted 3,480 representation elections. See Petitioner's Br. at 13.

choices based upon those resources while attempting to serve the public interest and fulfill its legislative mandate. Obviously, mandating absentee ballots in all elections would be a costly endeavor. We believe the Board has made a valid, well-reasoned determination to deploy its limited resources elsewhere and that this determination should not be disturbed without good cause or clear statutory authority.5 See NLRB v. Curtin Matheson Scientific, Inc., 494 U.S. 775, 787 (1990) ("we will uphold a Board rule as long as it is rational and consistent . . . even if we would have formulated a different rule had we sat on the Board"); NLRB v. Kemmerer Village, Inc., 907 F.2d 661, 663 (7th Cir. 1990).

Second, the widespread use of absentee ballots is not without risks. Absentee ballot procedures would add an additional layer of bureaucracy and complexity which, if not handled properly, could compromise the fair election process. See e.g., Marks v. Stinson, 19 F.3d 873 (3d Cir. 1994) (a case in which numerous illegally obtained absentee ballots were cast in a Pennsylvania state senate election); Wilson & Co., 37 NLRB 944, 952 (1941) (noting that absentee balloting, which was permitted at that time, "frequently raised material and substantial issues relating to the conduct of the ballot and the election.").

Moreover, the Board's current policy forbidding absentee

_____

5. Interestingly, to demonstrate that this is a reasoned policy choice, we note that both the Board's union-side and management-side advisory panels have advised the Board against allocating its precious and limited resources for absentee ballots. See Remarks at National Labor Relations Board Union Advisory Panel Meeting (March 12, 1998) at 10-11 (union advisor commenting that "[r]esources are limited. We recognize that . . . as long as the [Board] is so crippled . . . with respect to its resources, we do question the value of devoting . . . any capital to [the absentee ballot] issue."); Remarks at National Labor Relations Board Management Advisory Panel (March 18, 1998) at 4-5 (management advisor commenting that a `consensus' of the panel determined that "[a]lthough there may be individual cases where it would be to an employer's advantage to allow an employee to cast an absentee ballot, . . . we believe that in the long run it will be in the best interest of both employers and unions and employees and indeed the[Board] itself not to allow the use of absentee ballots.").

ballots regardless of individual circumstances provides the advantages of predictability and even-handed application. See Cavert Acquisition Co., 83 F.3d at 606 (approving the Board's voting eligibility standard permitting employees absent from work for medical reasons to remain eligible to vote without an individualized inquiry into whether they are "reasonably expected" to return to work because it is "simple, predictable and easily administered."). The policy does not provide a systematic advantage to any interested party, yet it maintains the integrity of the secret election process which has been a hallmark of NLRB representative elections.

In addition, the widespread use of absentee ballots could easily delay the election process by postponing vote counts. Although there are logistical procedures that could ensure that absentee ballots would be mailed and received before the actual manual election, such procedures would unquestionably require the NLRB to significantly extend the time between the announcement of the election date and the actual vote.[6] We can imagine a litany of unforeseen and unintended consequences (e.g., an extension of the campaigning period, increased tension between management and labor, driving up of campaign costs, etc.) from extending the time between the election date announcement and the actual election date. We believe such a determination is better left to the election experts at the NLRB.

III.

In conclusion, we are satisfied that the NLRB's policy choice regarding absentee ballots is supported by cogent and reliable analysis. We do not believe it is our role to substitute our judgment for that of the Board in the adoption and application of policies governing representation elections. See NLRB v. L & J Equipment Co., 745 F.2d 224, 230 (3d Cir. 1984). We find that the acting regional director's decision to follow the manual guidelines did not constitute an abuse of discretion. Therefore, we will

_____

6. In this case, for example, the election date was announced on December 30, 1996, and held on January 8, 1997.

grant the NLRB's petition for enforcement of its July 24, 1997 order.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

                        10