# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 19, 2016　　　Decided November 1, 2016

No. 15-1230

NCR CORPORATION,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with 15-1248

———

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

———

*Howard M. Bloom* argued the cause and filed the briefs for petitioner.

*Kyle A. deCant*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief was *Richard F. Griffin, Jr.*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Robert J. Englehart*, Supervisory Attorney.

Before: ROGERS and TATEL, *Circuit Judges*, and EDWARDS,

*Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: NCR Corporation ("NCR") petitions for review of the decision and order of the National Labor Relations Board that it violated section 8(a)(5) and (1) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158(a)(5) & (1) (2012), when it refused to bargain with the Union after a mail ballot election. NCR contends that the Board abused its discretion by refusing to consider seven late-received ballots because enforcement of its decision and order would result in the disenfranchisement of an outcome-determinative number of voters and negatively affect the integrity of the election, requiring NCR to recognize and bargain with a unit that may not represent a majority of employees who cast valid ballots. Board precedent, NCR maintains, establishes that where an election irregularity occurs resulting in possible disenfranchisement of a determinative number of votes, the election should be set aside and a re-run of the election conducted. NCR also contends that the Board "improperly exalted declaring the final result of the election over the Board policy to afford employees the broadest participation in election proceedings." Pet'r's Br. 11-12. For the following reasons, we deny the petition for review and grant the Board's cross-application for enforcement.

**I.**

The facts are undisputed. On June 9, 2014, the International Brotherhood of Electrical Workers Local 2222 ("Union") filed a petition for Board certification as representative of certain NCR employees. Thereafter, NCR and the Union signed a Stipulated Election Agreement calling for a mail ballot election. Paragraph 4 of the Agreement stated:

> The election will be conducted by mail. . . . Voters must return their mail ballots so that they will be received in the National Labor Relations Board, Region 01 office by close of business on August 4, 2014. . . . [Ballots] will be counted at the Region 01 office . . . at 10:00 AM on August 5, 2014.

On July 9, 2014, a Notice of Election was mailed to forty-one employees whom NCR had determined were eligible to vote in the election. The Notice added the bold-faced text:

> The election will be conducted by mail. . . . Voters must return their mail ballots so that they will be received in the National Labor Relations Board, Region 01 office by close of business on **Monday**, August 4, 2014. . . . [Ballots] will be counted at the Region 01 office . . . at 10:00 AM on **Tuesday**, August 5, 2014.

The ballots were mailed on July 21, 2014.

By close of business on August 4, 2014, twenty-eight ballots had been delivered to the Region 01 office. It was agreed to delay commencement of the count from 10:00 AM to 11:00 AM on August 5, 2014 in order to consider any additional ballots arriving with that day's mail. Three more ballots arrived on August 5, and the count began at 11:00 AM. The Union won the election by a vote of seventeen to fourteen. All thirty-one ballots were found to be valid; none was challenged. Two workdays later, on August 7, 2014, seven additional ballots were delivered to the Region 01 office. Five were postmarked from Providence, Rhode Island on July 31; one from Brockton, Massachusetts on August 1; and one from Boston, Massachusetts on August 4.

On August 8, 2014, NCR requested that Region 01's Acting Regional Director open and count the seven late-received ballots. The Union objected. The Acting Director denied NCR's request, and NCR filed objections to the conduct of the election. The Regional Director recommended that the Board overrule NCR's objections because "the conduct of the election was in accord with established election mechanics; no employee was misled as to the balloting requirements; and . . . a deviation from the established procedure would place an unusually high burden on the election process in general and prevent a prompt conclusion to representation proceedings." Reg. Dir. Decision 1 (Sept. 9, 2014) ("Reg. Dir."). NCR filed exceptions. On April 2, 2015, the Board adopted the Regional Director's findings and recommendations and certified the Union as the collective bargaining representative for the bargaining unit at NCR. *NCR Corp. & Int'l Bhd. of Elec. Workers, Local 222*, 01-RC-130289 (Apr. 2, 2015) ("Bd. Dec.").

When NCR refused to bargain, the Union filed an unfair labor practice charge, and a complaint and notice of hearing alleged that NCR violated section 8(a)(5) and (l) of the Act by refusing to recognize and bargain with the Union. Upon the filing of NCR's answer admitting its refusal to bargain and claiming the Board improperly certified the Union, the General Counsel moved for summary judgment in this "straightforward test of certification case." Mem. in Supp. of Mot. for Summ. J. & for Issuance of Bd. Decision & Order 1 (May 14, 2015). Following NCR's reply to an order to show cause, the Board granted summary judgment and found NCR had violated section 8(a)(5) and (l) of the Act. The Board concluded that all of the representation issues were or could have been litigated in the representation proceedings and that NCR neither offered to adduce newly discovered evidence nor alleged any special circumstances that would require the Board to reexamine the Regional Director's decision. *NCR Corp. & Int'l Bhd. of Elec.*

*Workers, Local 222*, 362 NLRB No. 146 (July 13, 2015). NCR petitions for review.

**II.**

NCR contends that the Board abused its discretion in overruling the objections to the conduct of the mail ballot election where late-received ballots were not opened and counted. Specifically, NCR maintains that the Board failed to decide whether the seven voters who mailed their ballots in accordance with the Notice of Election were possibly disenfranchised, and in so doing, arbitrarily sacrificed voter enfranchisement to administrative expediency. The voting instructions were, NCR continues, "certain to confuse voters, and thus, constituted an election irregularity." Pet'r's Br. 17. So, the election should be set aside in accordance with existing Board precedent, *Garda World Security Corp.*, 356 NLRB 594 (2011), and *Wolverine Dispatch, Inc.*, 321 NLRB 796 (1996).

Our review of the Board's decision and order is limited, and especially so in regard to representative elections where "Congress has entrusted the Board with a wide degree of discretion in establishing procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees." *NLRB v. A.J. Tower Co.*, 329 U.S. 324, 330 (1946); *see Durham School Servs., LP v. NLRB*, 821 F.3d 52, 58 (D.C. Cir. 2016); *Serv. Corp. Int'l v. NLRB*, 495 F.3d 681, 684 (D.C. Cir. 2007). The Board's interpretation of the Act will be upheld unless it "is not 'reasonable and consistent with applicable precedent.'" *Serv. Corp. Int'l*, 495 F.3d at 684 (quoting *Fashion Valley Mall, LLC v. NLRB*, 451 F.3d 241, 243 (D.C. Cir. 2006)). The Board's findings of fact are conclusive so long as "supported by substantial evidence . . . ." 29 U.S.C. § 160(e), (f) (2012). Because NCR "admit[ted] it refused to bargain with the union, if the union was properly certified, then

the Board's order is supported by substantial evidence." *NLRB v. Pinkerton's Inc.*, 621 F.2d 1322, 1325 (6th Cir. 1980).

## A.

NCR agreed to a mail ballot election and voluntarily entered into a Stipulated Agreement setting forth the terms for the conduct of the election. The Agreement provided, and the accompanying Notice to employees stated, that the Board would mail ballots to employees on July 21, 2014 and that "[v]oters must return their mail ballots so that they will be received in the [] Board Region 01 office by close of business" on August 4, 2014. Both the Agreement and Notice specified: "The mail ballots will be counted at the Region 01 office" at 10:00 AM on August 5, 2014. Consistent with the Agreement, the Board Agent opened and counted the thirty-one ballots received by the time of the count. Nonetheless, NCR contends the Regional Director should have counted the seven additional ballots that arrived two days later because the postmark dates show employees sent them in sufficient time for them to have been received by August 4 even if they did not arrive until two days after the count. NCR maintains that because the Agreement and Notice stated only that ballots must be mailed so that they will be received by August 4, not that they had to arrive by that date, all that was required of employees was to mail their ballots "early enough, in their reasonable estimation, to be received at the [Region 01 office] by August 4." Pet'r's Br. 17.

The Board did not abuse its discretion in rejecting NCR's objections to the conduct of the election. First, the Board concluded that the phrase "so that they will be received" by August 4 was not misleading. It noted that sentence has been used in Board notices for many years and makes clear that the ballots must be received in the Region 01 office by the date set in order to be counted. Second, NCR ignores the following sentence, in both the Agreement and the Notice, that explicitly

stated ballots would be counted on August 5, "clear[ing] up any possible confusion as to when the voters had to have their ballots arrive in order to be counted." Bd. Dec. 1 (*see* Reg. Dir. 4). Third, Board precedent shows that while it has sometimes counted ballots that arrive after a due date, it has consistently refused to count ballots that arrived after the count. *See Watkins Constr. Co., Inc.*, 332 NLRB 828 (2000); *Am. Driver Serv., Inc.*, 300 NLRB 754 (1990); *Kerrville Bus. Co.*, 257 NLRB 176 (1981). Likewise the *NLRB Representative Casehandling Manual*, section 11336.5(c), is to the same effect, and NCR bound itself to the Board's post-election procedures in the Stipulated Election Agreement, which states that "[a]ll procedures after the ballots are counted shall conform with the Board's Rules and Regulations."

NCR's objections to the election stem, then, from a misreading of the Agreement and Notice, and from a disagreement with the Board's policy on handling late-received ballots. To the extent NCR maintains that voters compared the text of the 2014 notice to notices sent in 2008 and 2010 and determined that the difference in wording was meaningful, NCR proffered no evidence of confusion and its view is facially unpersuasive. The Board points out that many notices cited by NCR contain identical text or simply state the same requirements in different terms and would prevent counting late-received ballots.

As regards the Board's precedent, NCR contends that the cases cited by the Board, as well as the Board's subsequent decision in *Classic Valet Parking, Inc.*, 363 NLRB No. 23 (2015), are distinguishable because they did not involve an election irregularity. NCR instead points to the Board's unpublished decision in *MCS Consultants, Inc.*, 29-RC-11339 (Sept. 25, 2006), where "[i]n light of the unique circumstances," when only two votes of a potential six total were timely

received, the Board ordered the opening and counting of ballots received after votes had been tallied, so long as the ballots were timely mailed. *MCS Consultants, Inc.*, 29-RC-11339 at *2. In *Classic Valet*, however, the Board explained that *MCS Consultants* "is neither precedential nor consistent with the Board's established rule on late-arriving mail ballots." *Classic Valet Parking, Inc.*, 363 NLRB at *1 n.2 (2015).

The Board's adherence to the parties' stipulated agreements as to phrasing of the instructions and the ballot count date does not constitute an election irregularity. *See Kirsch Drapery Hardware*, 299 NLRB 363, 364 (1990). Party stipulations governing representation proceedings are binding "absent a showing of 'changed or unusual circumstances. . . .'" *Comput. Assoc. Int'l v. NLRB*, 282 F.3d 849, 852 (D.C. Cir. 2002) (quoting *Micro Pac. Dev. Inc. v. NLRB*, 178 F.3d 1325, 1335 (D.C. Cir. 1999)). Moreover, the Board need not find an election by mail invalid "whenever a potentially decisive number of votes, no matter how small, is lost through the vagaries of mail delivery." *J. Ray McDermott & Co., Inc. v. NLRB*, 571 F.2d 850, 855 (5th Cir. 1978). Such an approach "might unduly deter the use of mail balloting in cases like this in which a mail election . . . might prove more representative of, and fairer to, the voting employees." *Id.* Here, the Board counted thirty-one ballots of forty-one eligible voters, a 76% participation rate. This is a higher percentage than in *Antelope Valley Bus Co.*, where the court concluded the petitioner had failed to show an election was invalid when some voters claimed not to have received their mail ballots, but 66% of the eligible voters successfully voted. *Antelope Valley Bus Co. v. NLRB*, 275 F.3d 1089, 1095-96 (D.C. Cir. 2002). Absent some evidence of misconduct, NCR fails to meet its "heavy burden" of showing that the election was improper. *Id.* at 1096 (quoting *Pinkerton's Inc.*, 621 F.2d at 1324).

The Board, further, was under no obligation to discuss the decisions on which NCR relies where "the grounds for distinction are readily apparent." *Id.* at 1092. In *Garda World Security Corp.*, the Board found an election irregularity where a Board agent closed the first of two polling sessions early and potentially disenfranchised voters who had arrived during the scheduled polling hours but left without voting when the agent told them their ballots would be subject to challenge. *Garda World Sec. Corp.*, 356 NLRB 594, 594 (2011). In *Wolverine Dispatch, Inc.*, polls were temporarily closed in the middle of a scheduled polling session. *Wolverine Dispatch, Inc.*, 321 NLRB 796, 796 (1996). Finding that an outcome determinative number of voters could have been disenfranchised by this unscheduled closing, the Board set aside the election. *Id.* at 797. Of course, election irregularities are not limited to unscheduled closings of the polls. But here the Board counted all of the ballots that were received by the Notice deadline, and counted those ballots received the following day pursuant to the agreement of the parties. Absent an election irregularity resulting from the Board's conduct of the election, the Board's disenfranchisement precedent is inapplicable.

**B.**

NCR's challenge to the content of the Agreement and Notice reflects, in effect, a disagreement with the Board's policy on late-received mailed ballots. Although the Agreement approved by the Regional Director did not use the specific phrasing proposed by NCR, NCR never objected either to the changes or to the return or ballot count dates prior to filing its petition for review with this court. *See* NLRA § 10(e), 29 U.S.C. § 160(e). Because pre-election agreements promote the prompt and certain completion of representation proceedings, the Board, with court approval, declines to entertain challenges to the parties' chosen election date after the fact. *See Cmty. Care Sys. Inc.*, 284 NLRB 1147, 1147 (1987); *NLRB v. Hood*

*Furniture Mfg. Co.*, 941 F.2d 325, 330-31 (5th Cir. 1991); *Van Leer Containers, Inc. v. NLRB*, 841 F.2d 779, 787-88 (7th Cir. 1988). The Board's long-established policy is based on the view that "otherwise an election could be converted from a definitive resolution of preference into a protracted resolution of objections disregarded or suppressed against the contingency of an adverse result." *A.J. Tower*, 329 U.S. at 330; *see* Reg. Dir. 6 (Sept. 9, 2014).

The heart of NCR's argument thus appears to be that the Board arbitrarily declined to permit the late-received, determinative mailed ballots to be counted because only two days had elapsed after the votes were counted and postmarks showed these ballots were mailed prior to the August 5 date when the ballots were to be counted. The Board's failure to explain why counting these seven ballots would have interfered with the prompt completion of the election, NCR contends, was an abuse of discretion. NCR notes that the Board accommodates postal delays in other circumstances, accepting objections to election results postmarked no later than the day before the due date regardless of when the objections are actually delivered. *See* 29 C.F.R. § 102.111(b). NCR adds that the Board generally asks that eligible voters wait a week from the mailing date before contacting it about missing ballots to allow the Postal Service adequate time to make deliveries, acknowledging the potential for postal delays with respect to the initial delivery of ballots that therefore necessitated a longer window to return ballots than was allowed for here.

The Board's policy of having a final ballot count at the time the ballots are counted is long established and well supported by the policy considerations recounted in *A.J. Tower*, 329 U.S. at 331. These other policies simply highlight that the Board has taken into consideration timing issues in different circumstances, as distinct from showing that the Board was

unreasonable in not considering a material factor, particularly when the Notice of Election was not ambiguous about the return or ballot count dates. NCR initially could have requested a later date for the ballot count. *See* Bd. Dec. 1 (*see* Reg. Dir. 6). Additionally, NCR's interpretation would require ballots to be counted regardless of when they were actually received, even if weeks or months after the scheduled date of the count had passed. And "individualized determination[s]" of whether ballots were mailed reasonably far enough in advance "would prove time-consuming and potentially lead to extensive post-election litigation." *NLRB v. Cedar Tree Press, Inc*., 169 F.3d 794, 797 (3d Cir. 1999).

The Board's interpretation, based on the balancing of conflicting interests in affording employees the broadest participation in election proceedings while still protecting against "delay and uncertainty," *see Abbott Ambulance of Ill. v. NLRB*, 522 F.3d 447, 451 (D.C. Cir. 2008), is consistent with its precedent. It furthers an election process that allows the parties potentially to begin collective bargaining the day after the ballots are counted. *See Monte Vista Disposal Co.*, 307 NLRB 531, 533 (1992). NCR's interpretation could shift the balance of interests chosen by the Board. Whether the Board's finality concerns might be mitigated under a mail ballot procedure providing a single drop-dead date of the start of the ballot count, *see Oneida Cty. Cmty. Action Agency, Inc*., 317 NLRB 852, 852-53 (1995) (Member Truesdale, concurring), remains to be seen. That determination is for the Board, not the court. *See Antelope Valley Bus Co.*, 275 F.3d at 1095.

Accordingly, we deny the petition for review and grant the Board's cross-application for enforcement of its Order.